UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORDIC NATURALS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PREMIUM SELLERS LLC,<br><br>Defendant. | Case No. 24-cv-04132-RFL (LJC)<br><br>**ORDER TO SHOW CAUSE WHY MOTION FOR DEFAULT JUDGMENT SHOULD NOT BE DENIED IN PART**<br><br>Re: Dkt. No. 17 |

## I.   INTRODUCTION

Plaintiff Nordic Naturals, Inc. (Nordic) brought this action against Defendant Premium Seller LLC (Premium), an unauthorized reseller of products bearing Nordic's trademarks. The Clerk entered Premium's default after it failed to appear and defend the case, and Nordic now moves for default judgment.

Judge Lin referred the matter to the undersigned magistrate judge for a report and recommendation. On the current record, the undersigned is inclined to recommend granting Nordic's Motion only as to Nordic's Lanham Act claim for trademark infringement, and with relief limited to an injunction against further infringement. Rather than issuing a report and recommendation at this juncture, however, the undersigned now issues this Order to Show Cause to allow Nordic to address other aspects of the Motion that the undersigned would not recommend granting on the available record, before the matter is returned to Judge Lin's docket.

Accordingly, Nordic is ORDERED TO SHOW CAUSE why its Motion should not be denied in part, by filing a response no later than two weeks from the date of this Order. If Nordic does not file a response by that deadline, the undersigned will issue a report and recommendation for entry of default judgment consistent with this Order.

## II.   BACKGROUND

### A.   Allegations of the Complaint

Because a plaintiff's allegations are taken as true (except as to damages) in resolving a motion for default judgment, this section summarizes the allegations of Nordic's Complaint as if true.

Nordic sells nutritional supplements directly to consumers and through authorized resellers, using trademarks that Nordic has registered with the U.S. Patent and Trademark Office. Compl. (ECF No. 1) ¶¶ 7–8, 11.

Nordic sets rules for its authorized resellers to promote quality control and customer service, which "are a fundamental part of a consumer's decision to purchase a product" in "the highly competitive nutritional supplement market." *Id.* ¶¶ 9–10; *see id.* ¶¶ 44–57. For example, authorized resellers must inspect all products, report any defects to Nordic, refrain from selling damaged or defective products, and cooperate in product recalls. *Id.* ¶¶ 52, 55. Authorized resellers cannot sell Nordic products through a website they do not own themselves without obtaining Nordic's written permission. *Id.* ¶¶ 50, 60–62. They must use images approved by Nordic and keep product descriptions up to date, and may not advertise Nordic products that they do not carry in inventory. *Id.* ¶ 63. They may not represent products as "new" if the products have been returned or repackaged. *Id.* ¶ 67. Nordic also places limitations on the use of third-party fulfillment services to ensure that customers' orders originate from authorized resellers, *id.* ¶ 68, and prohibits authorized resellers from selling to third parties that the authorized resellers know (or reasonably should know) intend to resell the products, *id.* ¶ 110.

Nordic provides a sixty-day satisfaction guarantee to customers for products sold by Nordic or its authorized resellers. *Id.* ¶¶ 73–74. Because Nordic cannot ensure the quality of products sold through unauthorized channels, the guarantee does not apply to products sold by unauthorized resellers, thus depriving customers of a benefit that attaches to products sold through authorized channels. *Id.* ¶¶ 75–76.

Premium has sold a high volume of Nordic's products without permission through the storefront name "GeoBelt" on Amazon. *Id.* ¶¶ 79–80. Premium is not an authorized reseller and

2

does not comply with Nordic's quality control requirements. *Id.* ¶¶ 94–100.

Beginning on April 29, 2022 Nordic has sent cease-and-desist letters to two addresses listed on the GeoBelt Amazon storefront, but received no response, and alleges that the names and addresses GeoBelt provided were false. *Id.* ¶¶ 81–84, 87, 88. Nordic identified a former operator of the storefront who informed Nordic that it was transferred to Premium in 2020. *Id.* ¶ 85. Nordic continued to send cease-and-desist letters to email addresses and mailing addresses listed on the GeoBelt storefront, and Premium intermittently ceased listing Nordic products, but always resumed selling them later. *Id.* ¶ 88. Premium has never responded to Nordic's letters and continued to sell Nordic products as of Nordic's July 9, 2024 Complaint. *Id.* ¶ 89.

Consumers have written negative reviews of Nordic's products on online marketplaces after purchasing them from unauthorized resellers (including Premium), "complain[ing] of receiving products that were defective, stuck together, old, damaged, in improper packaging, unsealed or not authentic." *Id.* ¶ 37; *see id.* ¶¶ 38–42, 101–02. Amazon presents such reviews as associated with Nordic's products rather than the resellers who sold them, thus damaging Nordic's reputation and customer goodwill. *See id.* ¶ 43.

Although Nordic's Complaint includes several claims for relief, including trademark and unfair competition claims under both state and federal law, *id.* ¶¶ 128–90, and its present Motion asserts that Nordic is entitled to judgment on all of those claims, ECF No. 17-1 at 19–20, the Motion grounds Nordic's arguments for relief solely on a theory of trademark infringement in violation of the Lanham Act, *id.* at 21, 22–28. This Order therefore focuses on that claim. Nordic contends that Premium's sales of products bearing Nordic's trademarks violate the Lanham Act, 15 U.S.C. §§ 1114 & 1125(a)(1)(A), because such products materially differ from genuine Nordic products in that they lack Nordic's guarantee and quality controls. Compl. ¶¶ 128–42.

Nordic's present Motion seeks judgment on all claims asserted, and disgorgement of profits totaling $1,060,362.09. *See* ECF No. 17-1 at 26; ECF No. 17-7 (Proposed Judgment) ¶¶ 2–3. Nordic seeks a permanent injunction: (1) barring Premium (and others acting in concert with it) from selling (or advertising, importing, exporting, etc.) Nordic products or products bearing Nordic's trademark, ECF No. 17-7, ¶ 6; (2) requiring Premium (and others acting in concert with

3

it) to destroy or return any Nordic products or products bearing Nordic's trademarks, *id.* ¶ 7; (3) requiring Premium (and others acting in concert with it) to "disclose to Nordic the contact information and identities of every individual and entity that has provided the Enjoined Parties with Nordic products and products bearing the Nordic Trademarks," *id.* ¶ 8; and (4) requiring Amazon to freeze all funds held in accounts owned or controlled by Premium, *id.* ¶ 9.

## III. LEGAL STANDARD

A court may enter default judgment on a motion by a plaintiff after the clerk has a entered a defendant's default. Fed. R. Civ. P. 55(b)(2). After considering threshold issues of jurisdiction and service of process, courts consider the following factors in exercising their discretion to grant or deny default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Courts evaluating a motion for default judgment take the factual allegations of a plaintiff's complaint as true except as to damages, which must be shown by evidence. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

## IV. ANALYSIS

### A. Jurisdiction

#### 1. Subject Matter Jurisdiction

Federal courts have subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Nordic's claims under the Lanham Act, a federal statute, fall within that grant of jurisdiction. Although the undersigned is not inclined to reach the merits of Nordic's claims under state law, those claims fall within the Court's supplemental jurisdiction because they "are so related to the [federal] claims . . . that they form part of the same case or controversy." *See* 28 U.S.C. § 1367(a). The Court therefore has subject matter jurisdiction over all claims at issue.

4

### 2. Personal Jurisdiction

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004) (citations omitted). Due process requires that a nonresident defendant "have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may be either general or specific. General jurisdiction applies where a defendant is "essentially at home in the forum State," such that the defendant can be sued in the that state's courts regardless of any connection between the state and the claims at issue. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation omitted). Nordic does not assert that Premium is subject to general personal jurisdiction in California.

Specific jurisdiction turns on the connection between the claims at issue and the forum state, and can be based either on a defendant's purposeful availment of the forum state's law (the test typically applied in contract cases) or on a defendant's purposeful direction of conduct to the forum state (the test typically applied in tort cases). *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021). Under either test, a plaintiff must also show that the claims at issue "arise out of or result from" the defendant's "forum-related activities," and that the exercise of jurisdiction is reasonable. *Id.* (citation omitted). The plaintiff bears the burden of establishing forum-related conduct and that the claims arise from such conduct. *Id.* If the plaintiff meets that burden, the defendant must present a "compelling case" that exercising jurisdiction would be unreasonable.

"Trademark infringement is treated as tort-like for personal jurisdiction purposes," thus implicating the purposeful direction test. *Ayla*, 11 F.4th at 979. "[A] defendant purposefully directs its activities toward the forum when the defendant has '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

5

suffered in the forum state.'" *Id.* at 980 (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017)). Mere knowledge of a *plaintiff's* ties to the forum are not sufficient to show purposeful direction; instead, a defendant must have engaged in "conduct directly targeting the forum." *Id.* (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011)).

"[D]istribution in the forum state of goods originating elsewhere" is an archetypal example of purposeful direction. *Schwarzenegger*, 374 F.3d at 803 (citing Supreme Court and Ninth Circuit authority). The Ninth Circuit has found personal jurisdiction to be proper in trademark infringement cases based on sales directed to the forum, noting "there is no 'small percentage of sales' exception" to that principle, so long as the sales to the forum are not "random, isolated, or fortuitous." *Ayla*, 11 F.4th at 981–82 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), for the final quotation here); *see also Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1094–95 (9th Cir. 2023) (applying that principle to sales conducted through an Amazon storefront).

Nordic alleges that Premium sold "substantial quantities of infringing products bearing Nordic's trademarks to consumers within California." Compl. ¶ 5. Taking that allegation as true, Nordic has established purposeful direction sufficient to support this Court exercising personal jurisdiction over Premium, and Nordic's claims arise from that conduct. As an absent party, Premium has of course made no showing that exercising such jurisdiction would be constitutionally unreasonable, and there is no basis apparent from the record to reach that conclusion. *See, e.g.*, *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1094 (N.D. Cal. 2014). The Court therefore has personal jurisdiction over Premium for the purpose of this case.

### B. Service of Process

As another threshold issue, the Court must determine that service of process was proper. *Bank of the W. v. RMA Lumber Inc.*, No. C 07-06469 JSW, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008). Service must comply with Rule 4 of the Federal Rules of Civil Procedure, which authorizes service either through several means specifically listed or in any manner allowed by state law. *See* Fed. R. Civ. P. 4(e)(1), (h)(1)(A).

Nordic asserts that "Premium was properly served with process on July 15, 2024, when Nordic's Complaint and the Court's Summons were delivered to the individual, over 18 years of age, in charge of the Premium's private mailbox." ECF No. 17-1 at 15 (citing ECF Nos. 8, 11). The Clerk denied Nordic's first application for entry of default for failure to show valid service of process. ECF No. 10. In its second application for entry of default, Nordic argued that it properly served Premium under Florida law, as incorporated by subparts (e)(1) and (h)(1)(A) of Rule 4. ECF No. 11 at 2. The Clerk subsequently entered Premium's default, ECF No. 12, and the undersigned agrees with the Clerk's apparent conclusion that service was proper.

A plaintiff may serve process on a corporate entity in the United States "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1) allows for service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Nordic completed service on Premium at a private mailbox facility in Florida. ECF No. 8. The following Florida statutory provision governs service at a private mailbox:

> If the only address for a person to be served which is discoverable through public records is a private mailbox, a virtual office, or an executive office or mini suite, substituted service may be made by leaving a copy of the process with the person in charge of the private mailbox, virtual office, or executive office or mini suite, but only if the process server determines that the person to be served maintains a mailbox, a virtual office, or an executive office or mini suite at that location.

Fla. Stat. § 48.031(6)(a).

Nordic has submitted a declaration that the address where it completed service[1] is listed on Premium's corporate documents as Premium's mailing address and the address of its registered agent, that it is a private mailbox, and that Nordic has not identified any other address for Premium. ECF No. 11-1, ¶¶ 5–7 & p.5. Nordic's proof of service includes a process server's declaration that he served process on the person in charge at that private mailbox facility. ECF No. 8. The undersigned is satisfied that such service was proper under Florida law, and thus also under Rule 4.

---

[1] 1317 Edgewater Drive, Ste #6045, Orlando, Florida 32804.

**C.     *Eitel* Factors**

Most of the *Eitel* factors either weigh in favor of default judgment or are inapplicable where, as here, a defendant has failed to appear. With no other avenue apparent to resolve this case, Nordic will be prejudiced if default judgment is not granted because it will be left without a remedy. There is no indication that Premium's default was due to excusable neglect—as discussed above, Nordic properly served process on Premium—nor that Premium would dispute any material facts. Notwithstanding the strong public policy favoring decisions on the merits, such a decision is not possible when Premium has failed to appear or defend and there is no indication that it intends to do so.

The sum of damages sought is significant but does not weigh against granting default judgment to the extent it is supported by evidence and warranted by law, an issue discussed separately below. "The remaining factors, 'the merits of plaintiff's substantive claim' and 'the sufficiency of the complaint,' are intertwined where, as here, the case has not advanced beyond the pleading stage." *Dist. Council 16 N. Cal. Health & Welfare Tr. Fund v. Prod. Serv. & Lab., Inc.*, No. 20-cv-2063-JCS, 2022 WL 17371170, at *7 (N.D. Cal. Sept. 13, 2022), *recommendation adopted*, 2022 WL 17371142 (N.D. Cal. Oct. 25, 2022).

**1.     Lanham Act Trademark Infringement Claim**

Nordic's present Motion focuses primarily on its claim for trademark infringement in violation of the Lanham Act. Nordic does not allege that the Nordic products (or at least all of the products) that Premium sold were counterfeit. Under the "first sale doctrine," reselling a genuine product manufactured by the plaintiff and bearing the plaintiff's trademark generally does not constitute infringement. Nordic relies on two exceptions to that doctrine: that Premium failed to uphold Nordic's quality control measures, and that the products Premium sold were not "genuine" in that they lacked Nordic's satisfaction guarantee. The undersigned finds the former principle sufficient to support Nordic's claim, and need not reach the latter.

> [T]he first sale doctrine . . . establishes that "resale by the first purchaser of the original article under the producer's trademark is generally neither trademark infringement nor unfair competition." *See Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998). The quality control theory of infringement is cognizable under

8

> the Lanham Act notwithstanding the first sale doctrine: "[d]istribution of a product that does not meet the trademark holder's quality control standards may result in the devaluation of the mark by tarnishing its image." *Id.* at 1087 (alteration in original) (internal quotation marks omitted) (recognizing viable claim for Costco's repackaging of plaintiff's figurines, which caused chips and other damage); *see also Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F.Supp. 131, 132–33 (D. Colo. 1980) (enjoining defendant from purchasing Coors beer in Colorado and reselling it in Maryland because defendant did not refrigerate beer during transport and the sale of skunked beer, an inferior product, harmed Coors's reputation), *cited favorably in Enesco Corp.*, 146 F.3d at 1085 n.2, 1087.

*Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 970–71 (9th Cir. 2016); *see also ADG Concerns, Inc. v. Tsalevich LLC*, No. 18-cv-00818-NC, 2018 WL 4241967, at *4 (N.D. Cal. Aug. 31, 2018), *recommendation adopted*, 2018 WL 6615139 (N.D. Cal. Nov. 1, 2018).

Nordic alleges—and the Court takes as true—that Premium failed to comply with Nordic's quality control rules and processes. Compl. ¶¶ 94–103; *see id.* ¶¶ 48–72 (describing Nordic's quality controls). As a result, customers have left negative reviews of Nordic's products on Amazon complaining of torn and dented packaging, missing safety seals, fish oil capsules that stick together or break open in the bottle, and unpleasant smells, among other concerns. *Id.* ¶¶ 39, 41. Those reviews exemplify the sort of reputational concerns that underly the quality control exception to the first sale doctrine. *See ADG Concerns*, 2018 WL 4241967, at * 4 (recommending default judgment on Lanham Act claims based on "customer complaints claiming that products purchased from [the defendant] with the [the plaintiff's] mark 'arrived with the expiration date scratched out,' had a 'dark substance inside the plastic wrap by the cap,' and had a 'different' consistency from the same item purchased two years earlier). Premium's unauthorized resale of products bearing Nordic's trademarks therefore violated the Lanham Act.

Nordic also argues that the products Premium sold were not genuine Nordic products because they lacked Nordic's satisfaction guarantee, which Nordic extends only to its own sales and sales by authorized resellers. Some courts have accepted that distinction as a material difference from genuine products sufficient to support a Lanham Act trademark infringement claim. *E.g.*, *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1073 (10th Cir. 2009); *MOM Enters., Inc. v. Roney Innovations, LLC*, No. 20-cv-04850-TSH, 2020 WL 8614101, at *7 (N.D. Cal. Nov. 24, 2020) (report and recommendation in a case voluntarily

dismissed before a district judge considered the recommendation). In affirming a district court's preliminary injunction based on a difference in warranty terms, however, the Tenth Circuit acknowledged the defendant's argument that such an approach could "permit any trademark owner to eliminate the resale of its goods, shut down its competitors, and ultimately fix the price of its product simply by limiting its warranty coverage and service commitments to those who buy from it directly." *Beltronics*, 562 F.3d at 1074. The Tenth Circuit held that the need to show likelihood of customer confusion tended to ameliorate that concern and relied on evidence that the plaintiff had received warranty inquiries from customers who purchased products from the defendant (notwithstanding the defendant's purported disclosure that products were not covered by the plaintiff's warranty). *Id.* at 1074–75.

Because Nordic's allegations of inadequate quality control by Premium are sufficient to support Nordic's infringement claim, and Nordic has not suggested that the two theories of infringement support different measures of damages or otherwise alter the relief to which Nordic might be entitled, the Court need not wade into the question of whether Nordic's somewhat conclusory allegation that "customers who purchase products from Defendants believe they are purchasing genuine Nordic products that come with the Nordic Guarantee" is enough to support that theory of liability. *See* Compl. ¶ 108. If Nordic believes there is a reason for the Court to resolve the merits of its theory that the lack of an applicable guarantee renders the products non-genuine, Nordic may address that issue in its response to this Order.

### 2. Other Claims

As previously noted, Nordic's present Motion justifies the relief that it seeks only by reference to its claim for trademark infringement in violation of the Lanham Act, even though Nordic also asserts several other claims. *See* ECF No. 17-1 at 22–28. Entry of default judgment is a matter of a district court's discretion, *see Eitel*, 782 F.2d at 1471, and the undersigned is not inclined to recommend entry of default judgment as to redundant claims, even if such claims might be meritorious. If Nordic objects to that approach and believes that entry of default judgment as to additional claims would serve a practical purpose, Nordic is ORDERED TO SHOW CAUSE why default judgment should not be denied as to its other claims.

**D.     Remedies**

Nordic seeks disgorgement of profits totaling around one million dollars, an injunction against further infringement, an order requiring Amazon to freeze Premium's accounts, and an injunction requiring Premium to disclose how it obtained the Nordic products it sold and destroy or return any such products in its possession.  This Order addresses those requests in turn.

        **1.     Disgorgement**

Nordic seeks disgorgement of all of Premium's revenue from the sale of infringing products from February 19, 2022 through October 21, 2024 on the Amazon platform.

Nordic quotes 15 U.S.C. § 1117(a) as providing that a trademark owner who prevails on a Lanham Act infringement claim "may recover 'subject to the principles of equity . . . (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." ECF No. 17-1 at 25 (quoting 15 U.S.C. § 1117(a) (ellipsis in original)).  Nordic also accurately notes that the statute requires a plaintiff "to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."  15 U.S.C. § 1117(a).  Accordingly, when "a defendant does not present any evidence of its costs and deductions, the plaintiff is awarded the defendant's total sales as the defendant's disgorged profits," including in the context of default judgment. *Herbalife Int'l of Am., Inc. v. Healthy1 Inc.*, No. 2:18-cv-6378-JFW-JC, 2019 WL 7169795, at *6 (C.D. Cal. July 8, 2019).

Nordic's quotation omits, however, the portion of § 1117(a) that conditions a disgorgement of profits as "subject to the provisions of sections 1111 and 1114 of this title."  *See* 15 U.S.C. § 1117(a); *cf.* ECF No. 17-1 at 25.  Section 1111 provides that unless a registrant gives notice that the mark is registered (which may be done through use of the ® symbol), "no profits and no damages shall be recovered under the provisions of this chapter unless the defendant had actual notice of the registration."  15 U.S.C. § 1111.[2]  Nordic has not offered evidence, or even alleged, that it displayed ® symbol or an explicit notice of registration on the products at issue, or that Premium otherwise "had actual notice of the registration."  *Cf. id.*  Although Nordic alleges that it

---

[2] Section 1114 includes various restrictions on recovery under circumstances that do not appear to be applicable to the case at hand.

11

sent a cease-and-desist letter on April 29, 2022 "to the entity and individual Nordic believed was affiliated with the [GeoBelt] Amazon Storefront" that Nordic later determined was operated by Premium, Compl. ¶ 82, it is not clear that Nordic sent that letter *to Premium* or that Premium actually received it. Nordic alleges the letter made clear "that Nordic is located in California," *id.* ¶ 5, that the storefront's sale of Nordic products infringed Nordic's trademarks due to lack of quality controls and the inapplicability of Nordic's satisfaction guarantee, *id.* ¶ 87, and that the storefront's unauthorized resale of Nordic products tortiously interfered with Nordic's contracts with whatever authorized resellers supplied the storefront with those products, *id.*, but Nordic does not allege that the letter provided notice that Nordic's trademarks were registered with the Patent and Trademark Office. The same is true of other cease-and-desist letters Nordic alleges it sent in the years since that first one. *See id.* ¶¶ 83, 88.

Even if Nordic had offered such an allegation, notice of registration is a precondition for disgorgement, rather than an element of a claim for trademark infringement. Based on the longstanding rule that damages on default judgment must be supported by evidence, not merely by allegations, *see TeleVideo Sys.*, 826 F.2d at 917–18, the undersigned would require at least some evidentiary basis to support the conclusion that either Nordic provided notice of its trademark registrations or Premium otherwise had actual notice of such registrations. Nordic is ORDERED TO SHOW CAUSE why its request for disgorgement of profits should not be denied for failure to satisfy the notice requirement of 15 U.S.C § 1111.

If Nordic can overcome that hurdle, it has offered sufficient evidence of the *amount* of disgorgement it seeks. In response to a subpoena, Amazon produced data indicating that such sales totaled $1,060,362.09. *See generally* ECF No. 17-2 (McCormick Decl., and supporting exhibits). At the request of the undersigned, *see* ECF No. 20, Nordic lodged native Excel versions of the data from Amazon, and the undersigned has confirmed that the total value Nordic seeks is an accurate sum of the sales revenue reflected in that data. As noted above, it is Premium's burden—and not Nordic's—to offer evidence of costs or deductions to calculate net profit from the gross sales revenue that Nordic has shown, and as a non-appearing defendant, Premium has not offered any evidence of costs. Nordic would therefore be entitled to recover the full sum that

it seeks *if* it can satisfy 15 U.S.C. § 1111's requirement to show notice of registration. That said, if Nordic relies on its April 2022 cease-and-desist letter or some subsequent communication (rather than notice on the products themselves) to satisfy § 1111, that amount may need to be reduced to exclude sales predating such communications.

Section 1117(a) permits a court discretion to adjust the amount of disgorgement upwards or downwards "subject to the principles of equity" and "in its discretion." 15 U.S.C. § 1117(a). The undersigned is not inclined to exercise that discretion in this case, where Nordic has not sought any increase and Premium has not appeared in the case or provided any basis for a reduction.

### 2. Injunction Against Infringement

The Lanham Act allows courts to grant injunctions "to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a).

> Normally, a party seeking a permanent injunction must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014) (applying *eBay* factors in trademark infringement case). The Lanham Act adds a statutory layer to the irreparable harm analysis for trademark infringement. The Act benefits trademark holders by creating "a rebuttable presumption of irreparable harm" when a permanent injunction is sought to remedy an established trademark violation. 15 U.S.C. § 1116(a).

*Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1005 (9th Cir. 2023).

Courts routinely grant injunctions against further infringement as part of default judgment in Lanham Act cases. *E.g.*, *GS Holistic, LLC v. Dukaan Alhanjari Inc.*, No. 23-cv-00749-CRB, 2025 WL 986466, at *7 (N.D. Cal. Apr. 2, 2025); *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 971 (N.D. Cal. 2019) (granting injunction against further use of marks at issue, but declining to require the defendants to issue corrective notice to other parties to whom they had previously wrongfully asserted ownership of the marks).

The undersigned is satisfied that: (1) there is no evidence here to rebut the statutory

presumption of irreparable harm; (2) monetary damages are insufficient to prevent future infringement, particularly when Nordic has faced difficulty contacting Premium and anticipates difficulty collecting damages; (3) the balance of hardships weighs in favor of an injunction, particularly when Nordic faces ongoing reputational harm from sales of defective products by Premium and other unauthorized resellers, and when Premium has failed to respond to multiple cease-and-desist letters; and (4) there is no reason to believe an injunction would disserve the public interest. The undersigned therefore intends to recommend GRANTING Nordic's request for an injunction against Premium's further unauthorized sales of products bearing Nordic's marks, regardless of whether Nordic cures the defects identified above regarding its request for disgorgement of revenue.

### 3. Order to Amazon

Nordic seeks an order requiring Amazon to freeze funds in Premium's account to allow for collection of those funds to satisfy Premium's disgorgement obligations. The Ninth Circuit has held that a preliminary injunction freezing a defendant's assets falls within a district court's inherent equitable authority and is appropriate ancillary relief for a Lanham Act claim when a defendant "may hide their allegedly ill-gotten funds if their assets are not frozen." *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 563 (9th Cir. 1992). Although the Ninth Circuit's decision in *Reebok* appears to have considered a preliminary order directed to the defendant itself, district courts have also authorized orders requiring third parties to freeze assets attributable to an infringing defendant. *E.g.*, *Sportswear Co. - S.p.A v. A Cheap Body Shop*, No. 1:21-CV-02906-JPB, 2021 WL 6050847, at *3 (N.D. Ga. Dec. 21, 2021); *Hand & Nail Harmony, Inc. v. Int'l Nail Co.*, No. CV 15-02718 SJO (AJWx), 2015 U.S. Dist. LEXIS 67421, at *35–36, *37–38 (C.D. Cal. May 22, 2015).

The undersigned therefore intends to recommend that Nordic's request for an asset freeze order directed to Amazon be GRANTED, if and only if Nordic cures the defects identified above regarding its request for disgorgement of Premium's revenues. (If Nordic does not cure that defect, there would be nothing to collect, and thus no need to freeze assets.) Because there is no indication that Amazon has received notice of this request or an opportunity to be heard on it, the

14

1 undersigned would recommend that such an order be without prejudice to any argument that Amazon might raise in a motion challenging it.

#### 4. Additional Terms of Proposed Injunction

Nordic's proposed order also includes terms that would require Premium to return or destroy any products in its possession bearing Nordic's marks, and to "disclose to Nordic the contact information and identities of every individual and entity that has provided the Enjoined Parties with Nordic products and products bearing the Nordic Trademarks." ECF No. 17-7 at 3. Nordic's Motion does not address those requests in any way. In the absence of any argument or explanation for why those terms are appropriate, the undersigned would be inclined to recommend that they not be included in any final injunction. Nordic is therefore ORDERED TO SHOW CAUSE why that portion of its proposed order should not be denied.

### V. CONCLUSION

For the reasons discussed above, Nordic is ORDERED TO SHOW CAUSE why its Motion for Default Judgment should not be denied as to: (1) all claims other than Lanham Act trademark infringement; (2) Nordic's request for disgorgement of revenue; and (3) Nordic's request for an injunction requiring Premium to disclose its suppliers and return or destroy products bearing Nordic's marks. Nordic must file a response no later than May 21, 2025 if it wishes to pursue other claims or those forms of relief. If Nordic believes there is a reason for the Court to consider its theory that the lack of an applicable guarantee rendered products non-genuine, Nordic may address that issue as well.

Alternatively, if Nordic is content to pursue a judgment consisting solely of its infringement claim under the Lanham Act and an injunction against further infringement, Nordic may file notice to that effect, and the undersigned will promptly issue a report and recommendation consistent with the analysis above.

**IT IS SO ORDERED.**

Dated: May 7, 2025

LISA J. CISNEROS
United States Magistrate Judge

15